UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 04-cr-10311-JLT |
| | ) | |
| ALVIN REEVES | ) | |

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

**I.    Introduction**

Defendant ALVIN REEVES has moved this Honorable Court to suppress evidence seized from his apartment by government agents who were acting pursuant to a search warrant issued by the Hon. Judith G. Dein (hereinafter, the "Warrant").  Defendant claims that the Warrant was improperly issued because it lacked sufficient probable cause in that it was based primarily on allegedly uncorroborated information provided by two "tipsters", each of whom, the defendant argues, had a reason to lie.  This claim is both legally and factually incorrect.

Contrary to the claims made in Defendant's Motion to Suppress and in his accompanying Memorandum of Law (collectively, "Defendant's Motion"), the Affidavit by Paul K. Durand in Support of the Application for the Search Warrant (hereinafter "Affidavit") provided ample probable cause on which the Magistrate Judge could (and did) base her finding of probable cause.  As argued more fully below, not only did the agents successfully corroborate the information provided by them, the manner in which the agents obtained the information from their sources provided the necessary indicia of reliability allowing the Magistrate Judge to rely on the sources' information.  Moreover, even if the Search Warrant Affidavit were found to lack sufficient probable cause, suppression would not be an appropriate remedy in this case.

For all these reasons and the reasons discussed below, Defendant's Motion should be denied.

## II.    FACTS AND BACKGROUND:

On September 15, 2004, United States Postal Inspector Postal Inspector Paul K. Durand ("Durand") submitted an application for a search warrant to search the premises of 14 Francis Drive, Apartment 8, in Randolph, Massachusetts, the defendant's residence. The Affidavit lists several reasons why Durand believed that he had probable cause to search the defendant's residence for documents demonstrating the defendant's connection to a bank fraud and identity fraud ring.

As grounds for probable cause, the Affidavit noted that REEVES had been convicted of the bank fraud and identity theft, the same crimes which were the subject of the Durand's then current investigation. REEVES had been released from custody in November 2003, approximately 10 months prior to the date of the Affidavit. Affidavit at Paragraph 6-7. The Affidavit further recounted Durand's face-to-face conversations with Anita Dejesus, the mother of one of REEVES' children. The first of these conversations had occurred on April 27, 2004, approximately 4 months earlier. In that conversation, Dejesus reported that a few months earlier, REEVES had again become involved in identity theft. Dejesus remembered seeing a scrap of paper in REEVES apartment (the site of the proposed search) with the name "Stephen Flaherty" on it, along with a date of birth and a social security number. Dejesus told Durand that when she showed the paper to REEVES, he said "I have been looking for that, now I can pay my cable bill." Dejesus also reported that she saw an estimated 15 to 20 additional slips with names and what appeared to be personal identifying information on them. Affidavit at Paragraph 8. Dejesus also told Durand the REEVES had obtained mobile telephone service under the stolen identity of Sarah Arens. Affidavit at Paragraph 8.

The Affidavit also recounts the efforts that Durand made to corroborate Dejesus' information. Specifically, Durand spoke with Sarah Arens and confirmed that her identity had been stolen. He also obtained the Sprint mobile telephone records that had been obtained using Ms. Arens' identity information. These records provided several linkages to REEVES. The address information provided on the account was the address of REEVES' girlfriend, and the location where REEVES was arrested in connection with his 2001 crimes.[1] Moreover, telephone calls made on the account are individuals Durand knew to be relatives of REEVES. Affidavit at Paragraph 9-10.

Durand further corroborated Dejesus information by talking with another individual, referred to in the Affidavit as CS #1. As reported in the Affidavit, CS #1 had been captured on bank surveillance videotape using a false driver's license to withdraw $9,000 from a victim's bank account. The Affidavit references two face-to-face meetings between Durand and CS #1, one on August 6, 2004 (approximately six weeks before the search warrant application), and a second conversation on August 20, 2004, (approximately three weeks before the search warrant application). Affidavit at Paragraph 12.

CS #1 provided specific information about the manner and means by which REEVES operated the bank fraud ring. CS #1 stated that REEVES asked CS #1 to obtain a passport sized photograph at a Walgreen's store and give it to REEVES. REEVES then took the photo, and at a later date met CS #1 with a Massachusetts driver's license bearing CS #1's photograph, but the identity information of another person. REEVES then instructed CS #1 to pose as the

---

[1] The girlfriend referred to in the Affidavit is a different person from Dejesus, who is referred in the Affidavit as the mother of REEVES' child, not his girlfriend. Though not stated in the Affidavit, the "girlfriend" is Tiombe Weaver, not Dejesus.

individuals whose identifying information appeared on the counterfeit driver's license, and conduct banking activity using that person's bank account. REEVES drove CS #1 to the banks, and paid CS #1 for his services. Affidavit at Paragraph 13.

CS #1 told REEVES that CS #1 had performed this activity numerous times since early spring 2004, and most recently on July 29, 2004 (less than one month earlier). Thus, CS #1 not only implicated REEVES in the criminal activity in which CS #1 had been caught, he also implicated REEVES (and himself) in other criminal activity. Affidavit at Paragraph 14.

Durand also reported that his investigation revealed apparent linkages between the account compromised by CS #1 and other bank accounts that had been victimized by other people. Durand thus concluded that other individuals were also working with REEVES, performing the same function as CS #1. Moreover, the activity described by CS #1 was very similar to the activity which led to REEVES' 2002 conviction. Affidavit at Paragraph 15.

The Affidavit also recounted another piece of corroborating evidence. On August 31, 2004, approximately two weeks before the search warrant application, REEVES had had an encounter with the Boston Police Department. Though REEVES had not been arrested at that time, he had been found in possession of $1,000 in cash. This amount of money seemed unusually large for a person who reported to his probation officer that his only income was $160 per week, an amount that is subject to garnishment for two child support payments. Affidavit at Paragraphs 16 and 17.

The Affidavit also told of a second face-to-face meeting between Durand and Dejesus. In this meeting, which occurred two days before the application for the search warrant, Dejesus recounted an event that had occurred at REEVES' residence (the proposed search site) three days

earlier. On that day, she observed Reeves with large amounts of cash, $300 of which he gave to her. She also saw several Fleet Bank withdrawal slips, each indicating withdrawals of approximately $2,000 to $2,500, which she found odd because she knew that REEVES did not have any bank accounts. Affidavit at Paragraph 18.

In this September 13, 2005 interview, Dejesus also told Durand that a few months earlier she saw two credit cards in names other than REEVES' in REEVES' backpack, and heard REEVES receive a voicemail message that "the girl who goes into the banks and makes withdrawals" had been sentenced to three years. She then heard REEVES return the call, and heard REEVES telling the person that "you can do three years" and "not to worry about money." On that same day, Dejesus and REEVES argued about REEVES' continued involvement in bank fraud, and REEVES assured her that he could not get caught, because "I don't go into banks."[2] Affidavit at Paragraph 18-19.

Finally, the Affidavit noted that based on Durand's training and experience, he knew that persons engaged in identity theft, bank fraud and credit card theft typically possess in their homes documents to advance their criminal activity, as well as computers, cash, and evidence of ownership and control of the premises. Affidavit at Paragraphs 20-23.

**III.    Argument:**

---

[2] Defendant claims to have a letter written by Dejesus in which she apologizes to the defendant for lying to the police. Assuming that this letter is genuine, it is not relevant to the Court's inquiry, as the defendants do not (and cannot) claim that Durand had any reason to know that Dejesus was lying. Indeed, subsequent events suggest that Dejesus was not lying – in particular the fact that the agents found many of the identity fraud and bank fraud documents they expected to find, in part based on Dejesus' information, when they executed the search warrant in REEVES' home.

      A.      <u>The Affidavit Established Probable Cause to Believe that Evidence of Bank Fraud and Identity Theft Would be Found in Reeves' Residence</u>

The Affidavit clearly stated sufficient probable cause to procure the search warrant. In reviewing an affidavit for sufficiency, a court must consider whether in the totality of the circumstances, the affidavit demonstrates probable cause to search the premises. <u>See</u> <u>United States v. Greenburg</u>, 410 F.3d 63, 66, <u>quoting</u> <u>United States v. Barnard</u>, 299 F.3d 90, 92-93. Under this standard, "the totality of the circumstances must demonstrate a fair probability that contraband or evidence of a crime will be found in a particular place. In a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause." <u>Id</u>.

Defendant first argues that the Affidavit is insufficient because the government's two primary sources were "tipsters" who had reasons to lie to the agents. However, the Affidavit provided more than sufficient basis to allow the magistrate judge assess the informants' reliability. First, both informant met with the affiant on multiple occasions in face-to-face conversations. This is a significant factor supporting the informants' credibility. "This sort of face-to-face contact between the agent and informant supports the informant's reliability." <u>Greenburg</u>, 410 F.3d at 67, citing <u>United States v. Gabrio</u>, 295 F.3d 880, 883 (8th Cir. 2002). Moreover, Durand knew the informants' identities (and even named one of them by name in the Affidavit). As the First Circuit has stated, because the affiant knew the informant's identity, he "could hold the informant responsible if [the informant] provided false information. This tends to establish an incentive for the informant to tell the truth." <u>Greenburg</u>, 410 F.3d at 67 <u>citing</u> <u>Bernard</u>, 299 F.3d at 93. <u>See also</u> <u>Florida v. J.L.</u>, 529 U.S. 266, 120 S.Ct. 1375 (2000).

Defendant claims that Durand did nothing to corroborate the information provided by the informants. This is simply not true. Durand corroborated the information Dejesus provided

during his first meeting with him by determining the following facts: 1) Sarah Arens had been the victim of identity theft; 2) her identity information had been used to obtain cellular service; 3) the cellular service was registered to an address known to be one of Reeves' girlfriends (and contrary to defendants' claim, not Dejesus' address); and 4) the some of the telephone numbers that had been called on the cellular service were the numbers of REEVES' relatives.

     Durand also corroborated Dejesus' allegations that REEVES was again involved in bank fraud by talking with CS #1, who also told Durand that he CS #1 knew that REEVES was again involved in bank fraud. It should be noted that defendant does not cite a single case in which an affidavit based on information provided by two independent sources has been ruled lacking in probable cause because the information provided by the sources was not corroborated. Indeed, it could be argued that the best form of corroboration is a second witness making essentially the same allegation. In any event, CS #1's information was further itself corroborated by the fact that the manner in which CS #1 stated he knew REEVES to be conducting the bank fraud was similar to the manner that Durand knew REEVES had committed bank fraud in 2001 (for which REEVES was convicted in 2002).

     Moreover, CS #1's information was inherently reliable because it was a detailed, first hand account of REEVES' criminal activity. "A specific, first-hand account of possible criminal activity is a hallmark of a credible tip." Greenburg, 410 F.3d at 67. Defendant believes that the detailed information provided by CS #1 is nevertheless meaningless because CS #1 had recently been arrested for a crime, and therefore had an incentive to implicate someone else in the

criminal activity.[3]  However, this ignores the fact that CS #1 did not merely implicate REEVES in the criminal actions in which CS #1 had been caught, but also told the Durand of other crimes that he and REEVES had jointly committed.  "When a self-incriminating statement is provided by an informant whose identity is known to the authorities, the statement is likely to be true because of the risk inherent in making such a statement."  Id at 68.

     Moreover, the Affidavit includes other information that corroborates the informants' allegations that REEVES was involved in a bank fraud and identity theft ring.  Specifically, approximately two weeks before, REEVES had been found with over $1,000 in cash on him.  Though it is not in and of itself a crime for a person whose weekly salary is $160 (before it is garnished for child support) to be holding $1,000 in cash, it strongly suggests that the defendant has means of obtaining money that he did not wish to share with his probation officer, very likely because the money was obtained illegally.  "The relevant inquiry is not whether "the particular conduct [observed] is innocent but the degree of suspicion that attached to particular types of noncriminal acts."  Id at 68, internal quotation omitted.

     It is also significant that Durand knew that REEVES had been previously convicted of bank fraud and identity theft, and that the specific type of conduct alleged by the two informants was very similar to the manner in which REEVES had conducted his prior illegal activity.  "An Affiant's knowledge of the target's prior criminal activity or record clearly is material to the probable cause determination."  Id, internal quotation omitted.

---

[3] Defendant also argues that CS #1 is unreliable because he has no history as an informant.  However, the First Circuit has held that "an informant tip can establish probable cause even though the affidavit does not contain information about the informant's past reliability."  Greenburg, 410 F.3d at 67.

Defendant ignores all these corroborating details, and instead points out that the government failed to conduct a controlled transaction in an effort to prove that the defendant was involved in criminal activity. This argument is a non-sequitor. REEVES was not alleged to be selling drugs or other contraband that would have allowed the agents to conduct a controlled transaction. The allegation is that REEVES obtained stolen identity information and then approached co-conspirators, gave them fake licenses, and asked the co-conspirators to conduct banking transactions using the fake identities. It is not clear that it would have been possible to conduct the "controlled transaction" that defendant seems to think was required. In any event, nothing in any of the cases cited by defendants comes remotely close to suggesting that any such controlled transaction is a prerequisite for a search warrant. Indeed, no such thing was discussed or contemplated in either Greenburg or Barnard.

Defendant's final argument is that the information contained in the Affidavit was stale, and therefore unreliable. This mischaracterizes the Affidavit. The Affidavit provided evidence that REEVES had been involved in identity theft and bank fraud for almost the entire 10 month period since being released from federal custody in November 2003. Indeed, Dejesus' information suggested that REEVES had begun reorganizing his bank fraud ring the very month that he left jail. CS #1 provided information that REEVES had committed a series of bank fraud transactions for a six month period, the most recent of which was just six weeks before. Moreover, Dejesus provided information that REEVES had had large amounts of money, and evidence of bank fraud in his apartment just a few days before the Affidavit. Additionally, REEVES had been found in possession of over $1,000 just two weeks before the Affidavit was signed. Taken as a whole, the Affidavit showed that REEVES had been involved actively in

bank fraud for essentially the entire time period since he completed his prison sentence for his 2002 bank fraud conviction. The fact that the evidence suggested that REEVES' criminal conduct was of longstanding and continuous duration does not make the information stale. On the contrary, it provides supports the notion that the criminal conduct was ongoing, and therefore a search of his premises was likely to reveal evidence of these ongoing activities. "Where the information points to illegal activity of a continuous nature, the passage of several months between the observations in the affidavit and issuance of the warrant will not render the information stale." United States v. Hershenow, 680 F.2d 847, 853 (1st Cir. 1982).

Given the extensive supporting and corroborating evidence provided in the Affidavit, and the deference given to a magistrate judge's finding of probable cause, there is no basis on which this Court should find that the Affidavit was insufficient to support the search warrant. See Greenburg, 410 F.3d at 66 ("In a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause.").

### B.   Even were the Affidavit Insufficient, Suppression would not be an Appropriate Remedy

Even were the Affidavit found to be insufficient to demonstrate the necessary probable cause to support the warrant, suppression would be an inappropriate remedy. "It is the magistrate's responsibility to determine whether the officer's allegation s establish probable cause and, if so, to issue a warrant comporting in form and with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgement that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." United States v. Leon, 468 U.S. 897, 921, 104 S.Ct. 3405,

3419, internal citations and quotations omitted. For this reason, the Supreme Court has held that suppression is an appropriate remedy only if the agents intentionally or in reckless disregard of the truth misled the magistrate. Id at 924. Nothing in the Affidavit or the defendant's motion supports any such finding.

### IV.    Conclusion

For these reasons, the United States asks this Court to deny Defendant's Motion to suppress evidence in this case.

                                              Respectfully submitted,

                                              MICHAEL J. SULLIVAN  
                                              United States Attorney

By:   /s/ Seth P. Berman  
        SETH P. BERMAN  
        Assistant U.S. Attorney

Dated:   November 7, 2005